UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

PHILIP WILLIAM VAN HICKMAN, PH.D,    )
                                     )
                Plaintiff,           )        Case No.
                                     )        Hon.
    v.                               )
                                     )
MUSKEGON HEIGHTS PUBLIC              )
SCHOOLS ACADEMY SYSTEM, a            )
Michigan public charter school, MUSKEGON )
HEIGHTS PUBLIC SCHOOLS, a Michigan   )
public school system, MUSKEGON       )
HEIGHTS BOARD OF EDUCATION, a        )
governmental body, ANTONETTE         )
ROBINSON, in her individual and official )
capacities, MIDWEST SCHOOL SERVICES, )
INC., a for profit corporation, and KATIE )
KAPTEYN, in her individual and official )
capacities,                          )
                                     )
                Defendants.          )
_____/

Joel B. Sklar (P38338)
LAW OFFICES OF JOEL B. SKLAR
Attorney for Plaintiff
500 Griswold, Suite 2450
Detroit, MI 48226
313-963-4529 / 313-963-9310 (fax)
joel@joelbsklarlaw.com
_____/

## COMPLAINT AND JURY DEMAND

Plaintiff Phillip Willian Van Hickman, Ph.D, by and through his attorney Joel

B. Sklar, files this action against Defendants Muskegon Heights Public School

Academy System, Muskegon Public Heights Schools, Muskegon Heights Public School Board of Education, Antonette Robinson, Midwest School Services, Inc., and Katie Kapteyn and says:

1.     Plaintiff is a resident of Muskegon Michigan, which is located in this Judicial District.

2.     Defendant Muskegon Heights Public School Academy System (MHPSAS) is a public charter school managed in whole or in part by the Muskegon Heights Michigan Area Intermediate School District (MAISD) which is located in this Judicial District.

3.     Defendant Muskegon Heights Public Schools (MHPS) is a public school system and governmental entity run by Defendant MHPS Board of Education (MHPS BOE) and is the authorizing body for the MHPSAS public charter school which is located in this Judicial District.

4.     Defendant Midwest School Services, Inc., is a Michigan for profit corporation which transacts business in this Judicial District.

5.     Defendant Antonette Robinson is the President of the MHPS BOE and resides and/or transacts business in this Judicial District. She is being sued in her official and individual capacities.

6.     Defendant Katie Kapteyn is the acting interim President of the MHPSAS Board of Directors (BOD) and transacts business in this Judicial District. She is being sued in her official and individual capacities.

7.     Qualified immunity does not apply to Defendants Antonette Robinson or Katie Kapteyn for their violation of Plaintiff's clearly established *First Amendment Free Speech Rights* or *Fourteenth Amendment Due Process* rights because any reasonable state actor would know that the alleged conduct ascribed to each of them violated Plaintiff's clearly established constitutional rights.

8.     Governmental immunity does not apply to Defendant Antonette Robinson for her malice, defamation, and slander *per se* of Plaintiff,  or for any intentional torts, statutory violations or other state law claims alleged against each respective defendant. See e.g., *Whistleblower Protection Act,* being *Mich. Comp. Laws §15.361*, *et seq.. See e.g., Mich. Comp. Laws § 37.2103 and Mich. Comp. Laws § 37.2201,* and/or *Mich Comp. Laws §691.1407(1), (2)(c).*

9.     Defendant MHPSAS operations are so intertwined, integrated, symbiotic, and enmeshed with those of Defendant Midwest School Services to make the two entities a joint and/or single employer for purposes of the violations of Plaintiff's federal and state civil rights.

10.     Defendants MHPS, MHPS BOE, MHPSAS, and Midwest School Services, may not avail themselves of governmental immunity on Plaintiff's federal

3

or state claims pursuant to statute (GTLA), *Monell,* and other authority and are liable for the actions of their employees, agents, servants, contractors and representatives under the doctrines of *respondeat* superior, vicarious liability and ostensible and/or apparent authority.

11.     This Court has subject matter jurisdiction over this action pursuant to *28 U.S.C.§ 1331* and *§1343* because it has original jurisdiction over Plaintiff's federal claims and supplemental jurisdiction over Plaintiff's state-law claims pursuant to *28 USC § 1367(a).*

12.     Venue is proper in this Court pursuant to *28 USC § 1391(b)* because a substantial part of the acts giving rise to this lawsuit occurred in this judicial district.

## COMMON FACTUAL ALLEGATIONS

13.     Plaintiff incorporates each of the above paragraphs word for word.

14.     Defendant MHPS experienced tumult, turmoil and controversy concerning the quality of educational services provided Muskegon Heights students, K-12.

15.     In 2016, the MHPS BOE authorized the Muskegon Heights Public School Academy System (MHPSAS) to operate as a non-sectarian, non-discriminatory public charter school with educational management organization services then provided by the Michigan Area Intermediate School District (MAISD).

4

16.    Defendants MPHS, the MHPS BOE,  and MHPSAS  aimed to improve the quality of K-12 education, curriculum, and overall academic experience for students in the MHPS.

17.    The MPHS BOE and its President, as the charter's authorizer, exercised appointment, and removal power over the MHPSAS Board of Directors (BOD).

18.    The MHPS BOE and its President made, influenced and/or participated in all employment decisions concerning the MHPSAS, including the hiring of an educational management organization as authorized by statute, MHPSAS staff, administrators, counselors, teachers, coaches, and the like.

19.    On August 17, 2023, MHPSAS Superintendent Reedell Holmes hired Plaintiff as the *Middle School Principal,* the *High School Principal* and to develop a curriculum for the entire school district.

20.    Plaintiff was the only certified school administrator in the MHPSAS and  by far, the most educated and highly credentialed in the school district.

21.    Sometime in 2023, Defendant MHPSAS hired Square 1 Strategy Group as its education management organization to operate the charter public school in cooperation with the BOE and MHPSAS BOD.

22.    In January 2024, Square 1 Strategy Group promoted Plaintiff to *Director of Student Services* and re-appointed him as *Director of Michigan Multi-*

Tiered Step System (MTTS), and *Positive Behaviors Interventions and Supports (PBIS) Coach.*

23.    Plaintiff's position was fully funded and guaranteed by a *"Memorandum of Understanding/Agreement 2024-2026 School Years Between Muskegon Heights Public School Academy System and Muskegon Area Intermediate School District."*

24.    Plaintiff also served as *District School Psychologist, High School Football Coach,* and participated in the hiring of school staff, all without additional compensation.

25.    Plaintiff's annual salary of $115,000 was fully funded, guaranteed, and budgeted through September 30, 2026, per the MOU between MHPSAS and MAISD.

26.    In or about February 2025, Plaintiff learned that a stalker from Missouri had sent categorically false, defamatory, outrageous, and incredible accusations about Plaintiff to MHPSAS teachers, current and former MHPS BOE members, Superintendent Holmes, the City of Muskegon Police Department, Hackley Community Care, and others.

27.    On February 21, 2025, the Muskegon County Circuit Court issued Plaintiff an *Ex Parte Personal Protection Order (PPO)* against his stalker.

28.    On February 25, 2025, Plaintiff handed copies of the PPO to MHPSAS BOD President Joe Warren, MHPSAS Superintendent Holmes, Square 1 Strategy Group administrator Dr. Belinda Hicks and MHPS BOE President Antonette Robinson.

29.    Defendant Antonette Robinson discussed the PPO with Plaintiff and insinuated that she had been in contact with his stalker, which Plaintiff suspected to be a crime.

30.    Robinson also falsely claimed that her home surveillance video had recorded Plaintiff providing a recent18-year-old female graduate with alcohol which would be a crime.

31.    Plaintiff told Defendant Robinson that the allegations were untrue, and no such recording existed because he never supplied anyone with alcohol and does not imbibe.

32.    Plaintiff further suggested that Robinson contact the police if she actually suspected that he broke the law by serving a minor with liquor.

33.    Robinson played the subject video for Plaintiff and others on her cell phone which recorded Plaintiff lawfully speaking with a 35-year-old mother of a recent graduate.

34.    Plaintiff called the 35-year-old mother in the video on speakerphone who confirmed to Robinson her age and that no alcohol was involved.

35.    On February 26, 2025, Plaintiff submitted a *"Formal Letter of Grievance"* to the MHPS BOE and others about Defendant Robinson's suspected unlawful activity, *per se* defamatory statements, and the PPO.

36.    Among other things, Plaintiff informed the MHPS BOE and others that he had gone to a lawyer who directed that any communication received from the stalker by any agent or employee of the MHPSAS be promptly reported to law enforcement because it was a violation of the PPO.

37.    Plaintiff asked the MHPS BOE to instruct Defendant Robinson to stop repeating the defamatory *per se* statements about Plaintiff to anyone.

38.    Robinson was angry and displeased with Plaintiff because he reported his suspicions of illegal activity and submitted the *Letter of Formal Grievance* to the MHPS BOE where she sat as its President.

39.    Defendant Robinson began to treat Plaintiff differently from other similarly-situated  employees including, among other things, intensely scrutinizing his work, continuing to repeat the defamatory *per se* statements made by his stalker to diminish his standing in the school and Muskegon Heights community, freezing him out of meetings, threatening him with discharge, requiring Plaintiff to undergo multiple background checks, creating a severe and pervasive retaliatory hostile environment and engaging in other wrongful conduct to orchestrate and choreograph Plaintiff's  unlawful termination.

40.    Defendant Robinson insisted that MHPSAS Superintendent Holmes and Square 1 Strategy Group fire Plaintiff.

41.    Superintendent Holmes and Square 1 Strategy Group refused the unlawful request.

42.    On June 5, 2025, MHPSAS BOD President Joe Warren warned Plaintiff to be careful because Antonett Robinson was coming after him and would not renew Plaintiff's fully funded contract because she was angry about the *Formal Letter of Grievance.*

43.    Defendant Antonette Robinson as the President of the BOE had the power to appoint and replace members of the MHPSAS BOD and terminate contracts of MHPSAS employees irrespective of any language in any agreement or contract with an educational management organization like Square 1 Strategy Group and Midwest School Services.

44.    Defendant Antonette Robinson made, influenced, or participated in the decision to terminate and/or oust Joe Warren as President of the MHPSAS BOD.

45.    MHPSAS BOD president Joe Warren confided in Plaintiff that he was fired because he refused to accede to Defendant Robinson's unlawful demand to fire Plaintiff.

46.    Defendant Robinson prematurely terminated Square 1 Strategy Group's management agreement because of their refusal to unlawfully terminate Plaintiff as Robinson demanded.

47.    Defendant Vice President Katie Kaptyn assumed the duties of the President of the MHPSAS BOD which had been left vacant after Joe Warren's ouster.

48.    On June 20, 2025, the MHPSAS BOD hired Defendant Midwest School Services, Inc. as the new management company for MHPSAS.

49.    On June 25, 2025, Midwest School Services, Inc. CEO David Patterson assured all MHPSAS employees, including Plaintiff, that their jobs were safe unless impacted by budget cuts.

50.    Budget cuts had no impact on Plaintiff's position because his was fully funded, guaranteed, and budgeted per the MOU.

51.    On June 27, 2025, in an about-face, Defendant Midwest School Services, Inc. sent Plaintiff a letter that his contract fully funded, guaranteed, and budgeted through 2026 would not be renewed.

52.    On July 1, 2025, the contract between Midwest School Services, Inc. and the MHPSAS became effective.

53.    Antonette Robinson made, participated in, or influenced the decision by the by BOE, MHPSAS BOD, interim President Katie Kapteyn, and Midwest School Services Group to unlawfully terminate Plaintiff.

## COUNT I

### VIOLATION OF MICHIGAN'S
### WHISTLEBLOWER PROTECTION ACT (WPA)

54.    Plaintiff realleges each paragraph above word for word.

55.    Defendants MHPSAS, MHPS BOE, Antonette Robinson, Katie Kapteyn and Midwest School Services, Inc., are all "employers" covered under the *Whistleblower Protection Act,* being *Mich. Comp. Laws §15.361 et seq.* (WPA).

56.    Plaintiff is an "employee" covered under the WPA.

57.    The Muskegon County Circuit Court is a public body under the WPA as are Defendants the MHPSAS, the MHPS and its BOE, Antonette Robinson, Katie Kaptyne, Midwest School Services, and the lawyer mentioned by Plaintiff in his *Formal Letter of Grievance*. See, *Mich. Comp. Laws § 15.361(a)-(d)(i)-(vi).*

58.    Plaintiff engaged in protected activity when he obtained a PPO from the Muskegon County Circuit Court, communicated with law enforcement about his stalker, and delivered a *Formal Letter of Grievance* to the MHPS BOE which reported Robinson's suspected illegal activity to the MHPS BOE,  including Robinson's persistent slanderous  and defamatory *per se* statements which  accused Plaintiff of "grooming," providing a minor with alcohol, criminal misconduct including possible involvement in a murder—facially absurd, false, scurrilous and outrageous accusations untethered from reality.

59.    Defendants MHPSAS, the MHPS BOE, Antonette Robinson, Katie Kaptyn, and/or Midwest School Services, Inc. had actual objective notice of Plaintiff's protected activity.

60.    Defendants MHPSAS, the MHPS BOE, Antonette Robinson, Katie Kaptyn, and/or Midwest School Services, Inc. retaliated against Plaintiff by, among other things, threatening him with discharge, creating a severe and pervasive hostile retaliatory environment, treating him differently from other similarly situated employees, intense scrutiny of Plaintiff's work, exclusion from meetings, etc., and unlawfully terminating Plaintiff from his fully funded job guaranteed through 2026.

61.    As a direct and proximate cause of Defendants MHPSAS, the MHPS and  MPHS BOE, Antonette Robinson, Katie Kaptyn,  and/or Midwest School Services, Inc. violation of his rights guaranteed under the WPA, Plaintiff suffered economic loss, loss of back pay, loss of front pay, loss of fringe benefits, non-economic injuries, loss of his good name and reputation, anxiety, depression, emotional distress, outrage, humiliations, shame, embarrassment, the loss of the enjoyments of life and other damages that will continue throughout and beyond this litigation.

**ACCORDINGLY,** Plaintiff asks this Court to enter judgment against Defendants MHPSAS, the MHPS and  MPHS BOE, Antonette Robinson, Katie Kaptyn,  and/or Midwest School Services, Inc. jointly and severally, for all amounts

to which she may be entitled including, but not limited to, all compensatory, exemplary and punitive damages, statutory attorney fees, interest and costs, lost back pay, lost front pay, and equitable relief in the form of reinstatement, a restraining order to prohibit retaliation and/or any other remedy under *Mich. Comp. Laws. §15.361*, et seq. or otherwise deemed appropriate by the Court.

## COUNT II

### VIOLATION OF PLAINTIFF'S RIGHT TO PROCEDURAL DUE PROCESS PURSUANT TO *42 USC § 1983*

62.     Plaintiff incorporates each of the above paragraphs word for word.

63.     The *Fourteenth Amendment* to the Constitution requires due process before the government may terminate a citizen's property interest in his employment, like Plaintiff.

64.     Plaintiff had a legitimate expectation of continued employment based on the MOU, verbal representations and assurances by Superintendent Holmes Square 1 Strategy Group and Midwest Schools Services and its CEO Dave Patterson that his job was secure through September 30, 2026, which created a constitutionally protected property interest subject to the due process clause of the *Fourteenth Amendment.*

65.     Prior to his termination, Plaintiff was not given timely and adequate notice detailing the reasons for the proposed termination nor was he given an

effective opportunity to be heard to defend against the false allegations and the chance to present his arguments and evidence.

66.    Defendants MHPSAS, MPHS, MPHS BOE Antonette Robinson, Midwest School Services, Inc., and Katie Kapteyn's failure to provide these procedural safeguards violated Plaintiff's clearly established *Fourteenth Amendment* due process rights.

67.    Defendants' actions, specifically their failure to provide Plaintiff notice and provide a hearing, resulted in his wrongful discharge, and caused Plaintiff to suffer economic and non-economic damages.

68.    Defendants Robinson and Kapteyn are not entitled to qualified immunity for the constitutional violations because any reasonable person would know that it was unlawful to terminate Plaintiff without providing him due process.

69.    Defendants MHPSAS, MHPS, MHPS BOE, and/or Midwest School Services as a matter of practice, policy and/or custom have with deliberate indifference failed to train, supervise, and discipline employees about the *Fourteenth Amendment* requirement for due process for employees like Plaintiff including, among other things, notice of charges and opportunity for a hearing to clear his name.

70.    As a direct and proximate cause of Defendants MHPSAS, MHPS, MHPS BOE, Antonette Robinson, Midwest School Services, Inc., and Katie

14

Kapteyn's violation of his clearly established *Fourteenth Amendment* rights, Plaintiff suffered economic loss, loss of back pay, loss of front pay, loss of fringe benefits, non-economic injuries, loss of his good name and reputation, anxiety, depression, emotional distress, outrage, humiliations, shame, embarrassment, the loss of the enjoyments of life and other damages that will continue throughout and beyond this litigation and other compensable consequential damages.

**ACCORDINGLY,** Plaintiff asks this Court to enter judgment against Defendants MHPSAS, MHPS, MHPS BOE, Antonette Robinson, Midwest School Services, Inc., and Katie Kapteyn, jointly and severally, for all amounts to which she may be entitled including, but not limited to, all compensatory, exemplary and punitive damages, statutory attorney fees, interest and costs, lost back pay, lost front pay, and equitable relief in the form of reinstatement, a restraining order to prohibit retaliation and/or any other remedy under *42 USC §1988* or otherwise deemed appropriate by the Court.

## COUNT III

### FIRST AMENDMENT RETALIATION
### PURSUANT TO 42 USC § 1983

71.    Plaintiff realleges the above paragraphs word for word.

72.    The *First Amendment* to the Constitution protects freedom of speech and access to the courts.

15

73.    Plaintiff's PPO and *Letter of Formal Complaint* addressed issues of substantial public concern including, but not limited to, public education, student and staff safety, suspected criminal conduct of public officials, misuse of authority, unlawful discrimination, retaliation, and other suspected wrongdoing all at taxpayer expense.

74.    Plaintiff spoke out as a citizen on matters of substantial public concern when he filed for and was issued a PPO from the Muskegon Circuit Court, presented the PPO to Defendants Antonette Robinson, the MHPS BOE, and delivered his *Formal Letter of Grievance* to the MHPS BOE where Robinson served as President.

75.    Defendants MHPSAS, the MHPS BOE, Antonette Robinson, Katie Kaptyne, and/or Midwest School Services, Inc. knew of and received objective notice about Plaintiffs protected activity.

76.    Defendant Robinson was visibly angry and confrontational with Plaintiff and wanted him fired because he reported his good-faith belief that Robinson was engaged in suspected illegal activity, including the removal of Joe Warren and premature termination of Square 1 Strategy Group as the educational management organization for the MHPSAS.

77.    Defendant Robinson used her position, authority, and influence as President of the MHPS BOE to defame Plaintiff and orchestrate his unlawful termination.

78.    Defendant Robinson, in conjunction Defendants MHPSAS, MHPS, MHPS BOE, Midwest School Services and Katie Kapteyn, engaged in conduct that would deter a person of ordinary firmness from speaking out.

79.    Defendants Robinson and Kapteyn are not entitled to qualified immunity for the constitutional violations because any reasonable person would know that it was unlawful to retaliate against Plaintiff for exercising his clearly established *First Amendment* rights to free speech and access to the courts.

80.    Defendants MHPSAS, MHPS, MHPS BOE, and/or Midwest School Services as a matter of practice, policy and/or custom have with deliberate indifference failed to train, supervise, and discipline employees about the *First Amendment Free Speech* Clause and its application to employees like Plaintiff, including a policy to retaliate against persons for their protected speech.

81.    As a direct and proximate cause of Defendants Robinson and Kapteyn's violation of his clearly established *First Amendment* rights, Plaintiff suffered economic loss, loss of back pay, loss of front pay, loss of fringe benefits, non-economic injuries, loss of his good name and reputation, anxiety, depression, emotional distress, outrage, humiliations, shame, embarrassment, the loss of the enjoyments of life and other damages that will continue throughout and beyond this litigation and other consequential damages.

**ACCORDINGLY,** Plaintiff asks this Court to enter judgment against Defendants Antonette Robinson and Katie Kapteyn, jointly and severally, for all amounts to which she may be entitled including, but not limited to, all compensatory, exemplary and punitive damages, statutory attorney fees, interest and costs, lost back pay, lost front pay, and equitable relief in the form of reinstatement, a restraining order to prohibit retaliation and/or any other remedy under *42 USC §1988* or otherwise deemed appropriate by the Court.

## COUNT IV

## CIVIL CONSPIRACY

82. Plaintiff realleges each paragraph above word for word.

83. A civil conspiracy is a combination of two or more persons who by some concerted action agree to accomplish a criminal or unlawful purpose by criminal or unlawful conduct.

84. Defendant Robinson acted in concert and conspired with Defendants MHPSAS, MHPS, MHPS BOE, Antonette Robinson, Midwest School Services, Inc., and Katie Kapteyn to violate Plaintiff's civil rights, retaliate against him and cause his unlawful termination and took affirmative steps in furtherance of the conspiracy to unlawfully retaliate against and terminate Plaintiff.

85. As a direct and proximate cause of Defendants MHPSAS, MHPS BOE, Antonette Robinson, Katie Kaptyne, and/or Midwest School Services, Inc. civil

conspiracy, Plaintiff suffered economic loss, loss of back pay, loss of front pay, loss of fringe benefits, non-economic injuries, loss of his good name and reputation, anxiety, depression, emotional distress, outrage, humiliations, shame, embarrassment, the loss of the enjoyments of life and other damages that will continue throughout and beyond this litigation.

**ACCORDINGLY,** Plaintiff asks this Court to enter judgment against Defendants MHPSAS, MHPS, MHPS BOE, Antonette Robinson, Midwest School Services, Inc., and Katie Kapteyn, jointly and severally,. for all amounts to which Plaintiff may be entitled including, but not limited to, all compensatory, exemplary, and punitive damages, statutory attorney fees, interest, and costs, or otherwise deemed appropriate by the Court.

## <u>COUNT V</u>

### SLANDER/DEFAMATION *PER SE* AGAINST ANTONETTE ROBINSON

86.    Plaintiff realleges each paragraph above word for word.

87.    Defendant Robinson knowingly or with reckless disregard for the truth made false statements of fact about Plaintiff including, among other things, that Plaintiff had engaged in criminal conduct, groomed students, served alcohol to minors, and other heinous crimes.

88.    Defendant Robinson statements constitute slander *per se* pursuant to *Mich. Comp. Laws. §600.2911(1).*

89.    Defendant Robinson maliciously published these defamatory statements to third parties to humiliate, embarrass, intimidate, and ultimately force Plaintiff to resign.

90.    The false statements repeated by Robinson caused harm to Plaintiff's reputation and standing in the educational community.

91.    As a direct and proximate cause of Defendant Robinson's slander and defamation, Plaintiff suffered economic loss, loss of back pay, loss of front pay, loss of fringe benefits, non-economic injuries, loss of his good name and reputation, anxiety, depression, emotional distress, outrage, humiliations, shame, embarrassment, the loss of the enjoyments of life and other damages that will continue throughout and beyond this litigation.

**ACCORDINGLY,** Plaintiff asks this Court to enter judgment against Defendant Antonette Robinson for all amounts to which she may be entitled including, but not limited to, all compensatory, exemplary, and punitive damages, statutory attorney fees, interest, and costs, or otherwise deemed appropriate by the Court.

## <u>COUNT VI</u>

## **BREACH OF CONTRACT AND PROMISSORY ESTOPPEL**

92.    Plaintiff realleges each paragraph above word for word.

93.    Plaintiff contract and employment with MHPSAS were secured under Title IV, Part A: Stronger Connections grant as stated in the MOU between the MIASD and MHPSAS.

94.    Former MHPSAS Superintendent Holmes and Square 1 Strategy offered Plaintiff the job as the MHPSAS *PBIS Coach* at an annual salary of $115,000.

95.    Superintendent Holmes unequivocally assured Plaintiff that his job was secure until his grant ended in September 2026.

96.    In reliance on this representation of secure employment for at least two years, Plaintiff accepted the offer and relocated to Muskegon.

97.    In June 2025, before the official start date of Midwest School Services management agreement, its CEO Dave Patterson unequivocally assured Plaintiff that his job was secure through the term of the grant because it was fully funded and not subject to budget cuts.

98.    Despite the unequivocal promises and affirmative representations, Defendant MHPSAS unlawfully terminated Plaintiff's employment and breached their contract with Plaintiff.

99.    Defendant MHPSAS should also be estopped from denying their unequivocal representations and promises that Plaintiff's job was fully secured and guaranteed until the end of the grant unless just-cause existed to end the agreement.

100.   As a direct and proximate result of MHPSAS' breach and Plaintiff suffered economic losses of least$115,000.00 and suffered consequential and related damages.

**ACCORDINGLY,** Plaintiff asks for a judgment against Defendant MHPSAS in an amount to compensate Plaintiff fairly and justly for the breach of contract together with any other relief deemed appropriate by the Court.

Respectfully submitted,

*s/ Joel B. Sklar*
Joel B. Sklar (P38338)
500 Griswold, Suite 2450
Detroit, MI 48226
313-963-4529
Attorney for Plaintiff
Joel@joelbsklarlaw.com

Dated:  September 15, 2025

## DEMAND FOR JURY TRIAL

Plaintiff Phillip Willian Van Hickman, Ph.D demands a jury trial for this cause of action.

Respectfully submitted,

*s/ Joel B. Sklar*
Joel B. Sklar (P38338)
500 Griswold, Suite 2450
Detroit, MI 48226
313-963-4529
Attorney for Plaintiff
Joel@joelbsklarlaw.com

Dated:  September 15, 2025